393 P.2d 662

FT. MOHAVE FARMS, INC., a corporation, and Pyramid Land, Inc., a corporation, Appellants,

v.

Charles H. DUNLAP and Nancy S. Dunlap, his wife, Appellees.

No. 7746.

Supreme Court of Arizona.

En Banc.

June 25, 1964.
Rehearing Denied Oct. 6, 1964.

Elmer C. Coker, Phoenix, for appellant Ft. Mohave Farms, Inc.

Christy, Kleinman, Peterson & Hoyt, by Chester J. Peterson, Phoenix, for Pyramid Land, Inc.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank, Phoenix, for appellees.

UDALL, Chief Justice.

This was an action for specific performance of an option to buy certain parcels of real estate situated in Mohave County. Judgment was entered granting the relief sought and from the denial of their motion for a new trial defendants bring this appeal.

Certain basic facts are undisputed. On December 16, 1958, defendant Ft. Mohave Farms, Inc., entered a written agreement with plaintiff Charles H. Dunlap and one Gardner giving them an option to buy specified parcels of real property then owned by Ft. Mohave. By the terms of the instrument, the lands were grouped into two tracts designated "A" and "B", and the right to purchase could be exercised separately as to each tract. The agreement further provided:

"This option shall be considered revoked only in the event that we, as owners, have made a bona fide sale to a third party at the same price and conditions as heretofore set above."

This option was to expire at midnight of June 1, 1959.

On March 9, 1959, Dunlap and Gardner exercised their option to buy Tract A. A second agreement was executed on April 8,

1959 by defendants Robert M. and Barbara B. Bonelli, respectively the President and Secretary of Ft. Mohave Farms, giving Dunlap a further option to buy Tract B and containing the following clause:

"The term of this option shall begin on September 15, 1959, and shall extend to January 30, 1960, and shall expire at midnight on that date."

It should be noted that Dunlap was the only optionee named in this second agreement and that no clause permitting a sale to third parties was included.

On May 19, 1959, before expiration of the December 16 option and before the effective date of the April 8 option, Ft. Mohave sold Tract B to defendant Pyramid Land, Inc. The following December, Dunlap attempted to exercise the option of April 8 and tendered the agreed down payment. When advised that the land had been sold, he commenced this suit for specific performance pleading the contract and naming Pyramid as a defendant on the ground that it bought the property with notice of his rights. Part of the land had been conveyed to innocent purchasers by Pyramid; as to those particular parcels, Dunlap sought money damages for the difference between the property's value at the time of tender and the price stated in the option agreement.

Defendants argue that the December 16 option continued in force until June 1, 1959 and that the sale to Pyramid was made in compliance with the revocation clause contained therein. Plaintiffs, on the other hand, take the position that the first option, including the clause which permitted a sale to third persons, was revoked by the second; that the case must therefore be treated as involving a single valid option after April 8. The execution of this option, they urge, necessarily restricted Ft. Mohave's power to dispose of the land prior to September 15. Ft. Mohave, in other words, was required to hold itself in readiness to perform when the time for performance arrived.

In ruling for plaintiffs, the trial court specifically found that:

"The option of April 8 was inconsistent in its terms with the earlier option either (a) because of material variations of substantially important portions of the option, or (b) because of a difference in parties, Mr. Gardner not being included. In any case, so far as the plaintiff Dunlap and these defendants are concerned, the April 8 option upon its execution replaced the earlier option and became the agreement of the parties."

The first assignment of error, and the only one we need consider, is that this finding was unsupported by any evidence.

The evidence is primarily those documents which were introduced in April,

1962 in connection with defendants' motion for summary judgment. They are: the two options in question, copies of certain trust agreements, and depositions of both Robert Bonelli and Charles Dunlap. Summary judgment was granted on the basis of these documents but we reversed, saying that material issues of fact appeared and that a trial was therefore necessary. See Dunlap v. Fort Mohave Farms, Inc., 89 Ariz. 387, 363 P.2d 194 (1961). The only new evidence presented by plaintiff at the subsequent trial consisted of some maps and plats, showing the location of the property; depositions of certain representatives of Pyramid Land, Inc., designed to establish that Pyramid purchased with notice of the option agreements; and the deposition of Glenn Ginn of Lane Title & Trust Co., the escrow agent. After a thorough examination of all these matters, we conclude that appellants' assignment is well-taken; that the above finding by the trial court is not supported by the record.

 It is established law that a contract is superseded by a subsequent agreement concerning the same subject matter only if that result is intended by the parties, see Turner v. Turner, 242 N.C. 533, 89 S.E.2d 245 (1955). Such intent must be established by clear and satisfactory proof. Glaser v. Haskin, 140 Or. 392, 13 P.2d 1071 (1932); Bering Mfg. Co. v. W. T. Carter & Bro., 255 S.W. 243 (Tex.Civ.App. 1923). Where the effect of the later contract on the previous one is not expressly stated, it is to be determined from the implications contained in the instruments and the relevant circumstances which aid interpretation. Commercial Nat. Bank of Charlotte v. Charlotte Supply Co., 226 N.C. 416, 38 S.E.2d 503 (1946). See also Ashton v. Ashton, 89 Ariz. 148, 359 P.2d 400 (1961). Turning to the instruments *sub judice,* we find no express statement in the option of April 8 which would abrogate the earlier contract. Nor are there inherent inconsistencies which necessitate that result. There are, to be sure, variations in the terms which we pointed out in our previous opinion. But the crucial issue is whether the second option went into force immediately upon execution and thus foreclosed any further action in reliance on the terms of the December 16 option. On this point— the respective dates of commencement and expiration—the two instruments are wholly compatible. The December 16 option expired on June first; the second agreement took effect on September 15. While the latter document may imply that Ft. Mohave was required to keep itself in a position to transfer the property, there is every possibility that the parties intended such implication to become effective only on June 2.

To resolve this dilemma, we must look to the surrounding circumstances and may also consider statements of the parties which reflect on their intent. Komarek v. Cole,

94 Ariz. 94, 381 P.2d 773 (1963). The following excerpt from the deposition of Robert M. Bonelli is helpful:

"Well, at the time that Mr. Dunlap and I signed this option dated April 8, 1959, at that particular time, Mr. Dunlap wanted a six months option I said, 'no, you cannot have a six months option. On the basis of past performance, you can have a three months option.' He said, 'I want a little bit more than I had under the option arrangement dated December 16, 1958,' which gave me the right to sell my land to someone else and also to him if he came up first with the money. He said, 'I don't mind competition, but for the time I have the option, I would like to have a free shot at it, and I don't want anybody else to be selling it.' [sic] I said, 'I understand that. Now, here it is, I am working under an agreement that is dated until June 1. If you want an agreement that commences at June 1 and goes for July, August and September, that is fine.' He said, 'No, I am not interested in an option during the summer time. No one can sell land during the summer time, and I am not even going to try, and in fact I am going to Lido Isle, California, for a month or six weeks.' He said, 'I will have to take my chances for the summer time, but when I come back I would like to be able to be active on the land during the winter time when the business season is at its peak in Phoenix.' I said, 'Well, that is fine with me if we understand that prior to September 15th and subsequent to June 1 you have no rights at all other than another purchase [sic] that might come to me and want to buy it.' He said, 'I understand that.'"

This indicates that Bonelli never intended to abrogate the December 16 option; that he considered Ft. Mohave bound by that agreement until June 1. Furthermore, the statements attributed to Dunlap show that he was willing to run the risk that the land would be sold in the summer. If this was his understanding of what his position would be after June 1, then *a fortiori* he must have contemplated that the right to sell, granted by the December 16 agreement, remained in effect.

The same conclusion is substantiated by Dunlap's own deposition

"Q At the time you entered into the option of April 8, 1959, the option of December 16, 1958, was still in full force and effect, wasn't it?

"A Yes, subject to sale.

"Q The option of December 16 as reflects between—

"A I would like to correct that. I don't know the legal implications. I think that is a legal question. I

don't know whether it was in force and effect or not.

"Q As far as you know?

"A Yes.

"Q Because Mr. Gardner was a party to this option of December 16, 1958, and he wasn't a party to this option of April 8, 1959?

"A No, he was not.

"Q So far as you know, and I am not trying to ask you a legal question, the option of December 16, 1958 was in full force and effect?

"A Without passing on the validity, yes."

The "legal implications," of course, turn on the understanding of the parties as to the effect of their actions. It appears from the foregoing that Dunlap believed, at the time the April 8 option was executed, that the December 16 option, revocation clause and all, remained in force.

 Aside from these statements, not a particle of evidence exists to clarify the parties' intent. We have repeatedly held that uncontradicted evidence may not be arbitrarily rejected when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon. Martin v. Industrial Comm., 75 Ariz. 403, 257 P.2d 596 (1953); In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815 (1949). And we stated in Schade's Estate, 87 Ariz. 341, 351 P.2d 173 (1960), that where testimony of an interested witness is corroborated by a disinterested witness, rejection of that evidence amounts to arbitrary action. Here, Bonelli's testimony was actually corroborated by the adverse party and is thus even more convincing. Moreover, while it was within plaintiff's power to refute Bonelli's statement, there is nothing in the record which suggests they even attempted to do so.

Far from meeting the "clear and satisfactory" evidence test of Glaser v. Haskin, supra, the plaintiffs have failed to introduce any shred of proof that the December 16 contract was superseded. The only evidence on this point thus shows that the parties contemplated and approved the possibility that Ft. Mohave might sell in accordance with the terms of the first option. It follows that the sale to Pyramid was made in full compliance with the contract provisions.

Aside from the foregoing considerations, we entertain serious doubts that Ft. Mohave and Dunlap, acting without Gardner, could have taken any action to abrogate the December 16 option. We recently held, in Clark v. Compania Ganadera de Cananea, S. A., 94 Ariz. 391, 385 P.2d 691 (1963), that a subsisting contract is not extinguished by a subsequent one unless the parties to both are identical. The same reasoning was

adopted in Warren v. Gray, 90 Ga.App. 398, 83 S.E.2d 86 (1954). The contract must stand or fall as a whole. So long as Gardner's rights remained outstanding, Ft. Mohave could exercise its power of interim sale.

The ruling in this case in no way amounts to a rejection of our previous opinion disapproving summary judgment for the defendants. We have held that summary judgment is proper only in "clear cases" where there is "no doubt" concerning the answer to material factual questions. Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86 (1944). And in Peterson v. Valley Nat. Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962) we stated that such a procedure is no substitute for a trial and should be denied when there is the "slightest doubt" as to the facts.

Reversal of the previous summary decree amounted only to a holding that these stringent standards had not been met. The essence of this controversy was the meaning of the parties' contractual arrangements. The allegations raised basic factual disputes. We now hold that plaintiffs failed to establish their contentions at the trial and the judgment in their behalf was erroneous as a matter of law.

Reversed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, BERNSTEIN and JENNINGS, JJ., concur.