673 P.2d 974

**The STATE of Arizona, Appellee,**

v.

**Wiley Edwin ROBERTS, Appellant.**

**No. 2 CA–CR 2887.**

Court of Appeals of Arizona,
Division 2.

Nov. 1, 1983.

Rehearing Denied Nov. 28, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gary A. Fadell, Phoenix, for appellee.

Wallace R. Hoggatt, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

This is a welfare fraud case. Appellant applied for food stamps on September 18, 1980, stating in his application that neither he nor anyone else in his household had any income. He was certified as eligible for food stamps for six months, beginning in October. On October 18, 1980, appellant applied for Aid for Dependent Children

(AFDC) benefits, again stating that neither he nor his wife was employed, and was certified to receive $244 a month for his four children.

The Department of Economic Security (DES) subsequently discovered that both appellant and his wife (who is not the mother of the four children) were in fact employed. For each of the false applications, appellant was charged with committing a fraudulent scheme or artifice connected with the state's business, in violation of A.R.S. § 13–2311; for each of the four monthly AFDC payments he received, he was charged with knowingly obtaining AFDC assistance to which he was not entitled, in violation of A.R.S. § 46–215; and for each of five months he was charged with receiving food stamps in a manner not authorized by law, in violation of A.R.S. § 13–3701(A). One of the charges under § 46–215 and one under § 13–3701(A) were later dismissed on the state's motion.

■ We find that the state failed to prove that appellant violated A.R.S. § 46–215. Although appellant did not move for a verdict of acquittal on all these counts, we can consider this issue for the first time on appeal because it is fundamental error to convict a person for a crime when the evidence does not support a conviction. *State v. Valdez*, 23 Ariz.App. 518, 534 P.2d 449 (1975).

■ A.R.S. § 46–215 provides in pertinent part:

"A person who knowingly obtains by means of a false statement or representation, or by impersonation, or by other fraudulent device:

    1. Assistance or service to which he is not entitled, or

    2. Assistance or service greater than that to which he is entitled ...

      \*     \*     \*     \*     \*     \*

... is guilty of a class 6 felony."

By the terms of the statute, an offense has not been committed if the person was entitled to receive the assistance or services, even if he made a false statement in obtaining them.

Because appellant's wife is not the natural or adopted mother of the children, her earnings were irrelevant in determining their eligibility for AFDC benefits. During the months in question, appellant worked with a partner, Mario Ortiz, on a contract basis at B & D Auto Sales in Sierra Vista. The manager at B & D, Robert Montano, testified that he would make a check out to appellant (Ortiz was a Mexican national and had trouble cashing checks) and appellant and Ortiz would split the money. He further testified:

"Q. All right. Now, between the two of them, you say that Mario Ortiz was more or less the boss and Wiley was the helper?

A: That's the way it was.

Q: Do you know anything about the way that the money was split between them?

A: I really don't know exactly how it was split between them. I think Mario got more money than Wiley out of the deal. He was the one that really did the major work.

Q: Did you have occasion to observe the splitting of the money?

A: Once in a while, I would cash their check. I could see them walking out to the car. Wiley would give Mario the money, and then Mario would pay Wiley."

Appellant testified that Ortiz was teaching him to be a mechanic and gave him only $20 a month, plus money for gas. Sometime in January 1981, Ortiz returned to Mexico and appellant began receiving the entire amount. He filled out a change report form for the DES dated January 18, 1981, reporting that his income was now $140 a week, but it was not received by DES until February 3.

■ It is a well-established rule in Arizona in civil cases that the trier of fact may not arbitrarily reject uncontradicted and unimpeached evidence from a disinterested witness where nothing in the evidence or the circumstances casts suspicion on it. *Ft. Mohave Farms, Inc. v. Dunlap*, 96 Ariz. 193, 393 P.2d 662 (1964); *O'Donnell v. Maves*,

103 Ariz. 28, 436 P.2d 577 (1968); *Fleitz v. Van Westrienen,* 114 Ariz. 246, 560 P.2d 430 (App.1977). The rule is equally applicable to criminal cases. See *People v. Ellis,* 107 Ill.App.3d 603, 62 Ill.Dec. 882, 437 N.E.2d 409 (1982); *State v. Swazio,* 173 Mont. 440, 568 P.2d 124 (1977); 23 C.J.S. Criminal Law § 900. A reviewing court will scrutinize the record to determine if there was any justifiable basis on which the trier of fact could have distrusted testimony, but where there is none, that testimony cannot be disregarded even by a jury. *People v. Ellis,* supra.

We cannot find any reasonable ground for disregarding the testimony of Robert Montano. It was plausible, disinterested, based on his direct experience, and uncontradicted. While the jury could have disregarded appellant's testimony that he received only $20 a month plus gas money, Montano's testimony establishes that appellant received something less than the full amount of the B & D check made out to him.

■ To prove that appellant violated A.R.S. § 46–215, the state submitted into evidence the records of B & D's accountant recording the amounts of the cancelled checks made out to appellant. In addition, a DES employee testified that with such income appellant was not eligible to receive any AFDC benefits. The state did not provide any evidence as to appellant's eligibility if his income were less than the entire amount of the checks. A conviction cannot be based on speculation. The jury could not be allowed to guess at what level of income appellant would no longer be entitled to receive AFDC. Since Montano's testimony established that appellant's income was less than the entire amount of the B & D checks, the jury had no evidence from which it could determine that appellant received AFDC benefits to which he was not entitled, or greater than that to which he was entitled. Therefore, his conviction for receiving AFDC benefits to which he was not entitled is reversed and Counts Three, Four and Five are dismissed.

■ Appellant argues that the food stamp counts should also be dismissed because the DES failed to comply with its own regulations requiring notice and a full evidentiary hearing where welfare fraud is suspected. Arizona Compilation of Rules and Regulations, R–6–3–2306 and 2307. We do not agree. The fact that a civil remedy is available to the government does not preclude it from also pursuing a criminal action. *Johnson v. United States,* 410 F.2d 38 (8th Cir.1969), cert. den., 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969). In *United States v. Cormier,* 639 F.2d 1177 (5th Cir.1981), the Social Security Administration violated its own regulations by failing to provide the defendant with a hearing even though it had not notified her of her right to have one before a formal prosecution was undertaken and she had requested one. The Court of Appeals held that this nevertheless did not require the dismissal of the criminal charges for fraudulently obtaining social security benefits. Assuming arguendo that the DES did violate its regulations, the state is not barred from prosecuting appellant for his criminal actions.

■ Appellant argues that the trial court erred in giving the following instructions:

"With respect to the food stamp program, changes in household circumstances must be reported within ten calendar days of the change."

According to the testimony of a DES employee and the change report form appellant filled out, which was admitted into evidence, a change in household income need only be reported if it is greater than $25 a month. Any error in giving the above instruction was harmless beyond a reasonable doubt. The only time the issue arose as to whether appellant properly reported a change in income was for January 1980 when he reported that his income rose by $140 per week. Therefore, the $25 minimum was irrelevant to determining whether appellant complied with the reporting requirement.

■ Appellant contends it was error to instruct the jury that:

"Evidence of the routine practice of an organization is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice."

First, appellant argues that this is an abstract instruction. An abstract instruction is one that presents the jury with a question of fact in the absence of any evidence to support it, or presents it with an issue that is beyond the scope of the pleadings. *Godvig v. Lopez,* 185 Or. 301, 202 P.2d 935 (1949), cited with approval in *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964). One of appellant's defenses was that he did not knowingly commit the offenses because he cannot read or write, his wife filled out the applications for him and DES employees did not go over them with him. The eligibility worker who interviewed him for his food stamp application testified that her general procedure is to ask the applicant every single question on the application and that she routinely uses the notation "CSN" to indicate "client states no" or "none." She had written "CSN" on appellant's application in the section for reporting all sources of income for the household. Therefore, the instruction deals with an issue that was directly before the jury.

Second, appellant argues that the instruction was a comment on the evidence in violation of Art. 6 § 27 of the Arizona Constitution in that it directed the jury to infer a fact from the evidence. In *State v. Corley,* 108 Ariz. 240, 495 P.2d 470 (1972), the court held that it would have been an invasion of the jury's province if the court had instructed, "[t]here is an inference arising out of the failure of the State to call expert medical witnesses ..." because, in that form, the instruction told the jury they were required to make the inference as a matter of law. In contrast, in *State v. Willits,* supra, the court expressed its approval of instructions in the form "If you find ..., you may infer ... ."

The instruction sub judice conform to the *Willits* form of instruction. While "infer" is defined as "to derive as a conclusion," Webster's New Collegiate Dictionary 585 (1980), "relevant" is defined as "having significant and demonstrable bearing on the matter at hand." Ibid. at 969. The trial court below, in effect, instructed the jury that evidence of a routine practice has a bearing upon whether conduct on a particular occasion was in conformity thereto. This is far closer to instructing the jury that it may derive the conclusion than to instructing that it must derive the conclusion as a matter of law. In addition, the instruction in *Corley* was objectionable because the judge would have stated that the state had failed to call expert medical witnesses. The instruction here left it to the jury to determine whether either party had provided sufficient evidence of the routine practices of an organization.

Finally, appellant contends that additional error, e.g., the trial court's handling of a Rule 9.3 violation and its failure to adequately instruct the jury about the separate nature of the counts, prevented him from receiving a fair trial. We do not agree.

On the second day of trial, it was brought to the court's attention that several of the state's witnesses had talked to each other in violation of Rule 9.3, Arizona Rules of Criminal Procedure, 17 A.R.S., which had been invoked by appellant. The court questioned two of the witnesses to determine the substance of the conversation, which was trivial and unrelated to their testimony, and concluded that no action was necessary. Appellant did not object at the time to the fact that both witnesses were in the courtroom when this questioning occurred, or to the court's failure to examine two additional witnesses who were involved. The decision whether to impose sanctions for a Rule 9.3 violation is within the sound discretion of the trial judge. *State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047 (App.1980). The court below did not abuse its discretion. Because appellant does not claim that this incident prejudiced him in any manner, it is difficult to see how he can argue that he was denied a fair trial thereby.

Appellant also argues that the jury was not adequately instructed about the

separate nature of the counts because the court instructed that it could "find the defendant guilty of more than one crime on the same set of facts," and in other instructions it used the words "verdict" instead of "verdicts." However, the court also specifically instructed that each count was to be considered separately. In addition, the jury was given 18 forms of verdict for the nine counts. Viewed in their entirety, we do not find the instructions confusing or misleading.

Appellant's conviction for receiving AFDC benefits to which he was not entitled is reversed and Counts Three, Four and Five are dismissed. The conviction is affirmed in all other respects.

HATHAWAY and BIRDSALL, JJ., concur.