IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

DANIEL C. SCHICKNER, *Petitioner/Appellee*,

*v.*

RENNA M. SCHICKNER, *Respondent/Appellant*.

No. 1 CA-CV 13-0513 FC
FILED 4-16-2015

Appeal from the Superior Court in Mohave County
No. S8015DO201000482
The Honorable Charles W. Gurtler, Judge
The Honorable Rick A. Williams, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Rowley Chapman & Barney, LTD., Mesa
By Paul S. Rowley and Nathaniel H. Wadsworth
*Counsel for Petitioner/Appellee*

The Wilkins Law Firm, PLLC, Phoenix
By Amy M. Wilkins
*Counsel for Respondent/Appellant*

---

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

¶1        Renna M. Schickner ("Wife") appeals from two provisions of the trial court's decree dissolving her marriage to Daniel Schickner ("Husband").  Wife argues the court (1) undervalued two jointly-owned business interests, Western Medical Eye Center, LLC ("WME") and Physicians Surgery Center, LLC ("PSC"), and (2) erroneously found she was not entitled to one-half of the monies distributed to Husband from those business interests during the three-year period between the filing of the petition for dissolution and entry of the decree.  We conclude that sufficient evidence exists in the record supporting the court's valuation as to PSC, but not WME, and therefore vacate and remand the court's ruling for a redetermination of the value of WME.  Regarding the post-petition distributions Husband received, we vacate the court's ruling and remand for further proceedings.

## BACKGROUND

¶2        The parties married in 1998 and have two minor children.  During the marriage, the parties acquired a 50% community interest in WME, located in Kingman, where Husband practices as an ophthalmologist.  The parties also acquired a 20% community interest in PSC, also located in Kingman, where Husband performs surgeries.

¶3        In June 2010, Husband filed a petition for dissolution of marriage.  Early in the case, Wife filed a motion for temporary orders seeking a declaration that pending a final decree, she was entitled to receive a one-half share of all distributions made from WME and PSC.  The trial court held a hearing on the motion and received testimony from Husband and Wife as well as Husband's certified public accountant, Brandon Bull.  The court then determined that "no matter how the distributions are characterized, the parties must report the same as taxable income.  There were no reductions in capital accounts. . . . [T]he distributions are appropriately characterized as salary or earned income."  The court therefore denied Wife's request for one-half of the distributions made to

Husband. As to other issues raised in the motion for temporary orders, the court ordered that Husband reimburse Wife for one-half of the mortgage payments on the family residence occupied by Wife and pay $7,000 per month as spousal maintenance.

¶4             As the matter progressed to trial, the case was re-assigned to a different judge. The primary contested issues were the valuations of WME and PSC for the purpose of determining the amounts Husband owed to Wife for acquiring her share of the marital community's interests in the two businesses.

¶5             Through his experts, John Pinto and Stephen Koons, Husband presented multiple valuations for the parties' jointly held 50% business interest in WME: (1) $475,000 (Pinto—applying minority share and marketability discounts), (2) $620,000 (Koons—applying minority share and marketability discounts), and (3) $830,000 (Koons—not applying minority share or marketability discounts). As to the parties' jointly held 20% interest in PSC, Husband's experts provided the following values: (1) $580,000 (Pinto—applying minority share and marketability discounts), (2) $490,000 (Koons—applying minority share and marketability discounts), and (3) $540,000 (Koons—not applying minority share or marketability discounts). Through her expert, Calvin Swartley, Wife presented a valuation of WME at $3,233,000 with the community's 50% interest in WME being $1,617,000 and a valuation of PSC at $5,261,000 with the community's 20% interest in PSC being $1,052,000.

¶6             In general, the three experts testified to the complexity of the valuations, explaining that factors such as assets, liabilities, taxes, liquidity, depreciation, interest expenses, revenue, cash flow, rents, goodwill, operating expenses, management agreements, operating agreements, market size and share, capitalization rates, marketability, and control were considered in reaching the final calculations. Each of the experts also prepared written reports documenting their respective valuations of the two businesses.

¶7             Husband disputed Swartley's valuation, arguing, among other things, that Swartley applied a capitalization rate that was too high and did not include a discount for lack of marketability and lack of control as to both businesses. Wife countered that Husband's experts incorrectly approached the valuation question by assessing the marketable value of Husband's interests in WME and PSC as if he were selling to a third party. Wife asserted that discounts for lack of marketability and lack of control are only considerations if an outside buyer is buying into a practice, and are not

appropriate factors when evaluating the value of a present owner "buying out" the interest of another present owner. Wife also raised claims regarding "inflated rents" and excessive salaries paid to family members.

¶8 The parties also disputed the character of the distributions from the businesses following Husband's filing of the petition for dissolution. Husband argued Wife was not entitled to any of the monies paid to him because they were in the nature of salary and earned income and thus constituted his separate property. Wife countered that Husband's salary from WME was limited by contract to $250,000 per year and therefore all monies he received above this salary amount were community property. Wife further argued that all distributions from PSC were community property.

¶9 Brandon Bull, C.P.A., testified that Husband receives a base salary of $250,000 from WME, but, as a tax-saving measure implemented in early 2010, Husband receives the rest of his compensation for his "toil and labor" as distributions. By way of illustration, Bull explained that Husband received "exactly the same" compensation in 2010 as in 2009 ($500,000), but elected to change the form of payment from entirely salary to one-half as salary and one-half as distributions to avoid paying Medicare tax on the "non-salary" portion.

¶10 After a five-day trial, the court issued a minute entry setting forth its findings and conclusions. The court found Pinto's "zen master" approach to valuations "disconcerting," but noted his credibility was bolstered in that he and Koons reached similar valuation calculations. The court specifically disagreed with certain "foundations" underlying Swartley's analysis:

> First, [Swartley] used an eleven percent (11%) capitalization rate which is normally attributable to that of a large publicly traded company. This rate resulted in a greater appraised fair market value. The court finds it would be improper to take a capitalization rate that might be attributed to a large company such as Eye Masters or Nationwide Vision and apply it to a small company like WME or PSC.
>
> . . . .
>
> The second concern is that [Swartley] did not evaluate the specific community interest of WME and PSC. Instead, [Swartley] determined the total value of PSC then divided that amount by five (5) and came up with a value. It evaluated

4

WME as a whole and then divided it in half to come up with a community property interest. The court finds this led to an inflated value.

The court also noted "that a minority interest has less value than the total interest of a company on a per – share basis," finding "[t]his distinction [] significant because the community does not own a controlling interest in either business venture." The court then found that the "fair market value" of the community's 20% interest in PSC is $536,000 and the community's 50% interest in WME is $602,000 and ordered Husband to pay Wife $569,000 for her one-half share of the community interest in the two business interests.

¶11            As to the issue of distributions, the trial court rejected Wife's claim that she was entitled to her one-half share of the payments Husband received that exceeded his $250,000 salary, which according to Wife was an appropriate amount for an ophthalmologist. Agreeing with temporary orders analysis of the issue, the court found that with regard to WME, it is a small business that relies on Husband's toil and labor to remain profitable and therefore all the post-filing distributions are his separate property. The court did not specifically address distributions Husband received from PSC. After the court entered a signed decree of dissolution, Wife filed a motion to amend and a motion for reconsideration, which the trial court denied. Wife then timely appealed.

## DISCUSSION

### A.    Valuation of WME and PSC

¶12            Wife contends the trial court undervalued the community's interest in WME and PSC. Specifically, she asserts the court improperly applied a minority share discount in contravention of Arizona law.

¶13            We review a court's determination of the value of a business in a divorce proceeding for an abuse of discretion. *See Roden v. Roden*, 190 Ariz. 407, 411, 949 P.2d 67, 71 (App. 1997) (holding that trial court did not abuse its discretion by accepting the opinion of husband's expert when determining the value of a community business interest). A trial court abuses its discretion when it commits an error of law or "reaches a conclusion without considering the evidence . . . or the record fails to provide substantial evidence to support the trial court's finding." *Flying Diamond Airpark*, *LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) (internal quotation omitted). "We defer to the trial court's factual findings unless clearly erroneous." *City of Tucson v. Clear Channel*

*Outdoor, Inc.*, 218 Ariz. 172, 189, ¶ 58, 181 P.3d 219, 236 (App. 2008). "A factual finding is clearly erroneous if no substantial evidence supports it." *Id.*

**¶14**        Pursuant to statute, the trial court must divide community property "equitably, though not necessarily in kind[.]" Ariz. Rev. Stat. ("A.R.S.") § 25-318(A). As a general principle, "all marital joint property should be divided substantially equally unless sound reason exists to divide the property otherwise." *Toth v. Toth*, 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997).

**¶15**        To support her claim that the trial court should have used a different valuation methodology and not applied a minority share discount, Wife relies on *Pro Finish USA, Ltd v. Johnson*, 204 Ariz. 257, 63 P.3d 288 (App. 2003), and cases from other jurisdictions. As Wife acknowledges, however, *Pro Finish* is a dissenters' rights case applying statutory buy-out provisions that require a "fair value buy-out" under specific statutory situations. 204 Ariz. at 260, ¶¶ 8-9, 63 P.3d at 291; *see also* A.R.S. §§ 10-1325(A), -1301. Because the division of community assets in a marital dissolution proceeding is governed by an equitable division principle (a different standard), *Pro Finish* is inapposite.

**¶16**        No Arizona case bars a court from applying a minority share discount when valuing minority interests in a domestic relations case. Consistent with the majority of other jurisdictions that have addressed the issue, we decline to adopt such a bright-line rule here. *See, e.g., Hanson v. Hanson*, 125 P.3d 299, 308 (Alaska 2005) (explaining that minority share discounts may be "used in proper settings" but need not be "applied in all instances"); *In re Marriage of Davies*, 880 P.2d 1368, 1375 (Mont. 1994) (concluding that application of a minority share discount is "appropriate" in some cases); *cf. In re Marriage of Batt*, 945 P.2d 517, 524 (Or. App. 1997) (explaining that application of "a marketability discount is an appropriate device to use in valuing a party's interest in an asset under some circumstances"). *But see Brown v. Brown*, 792 A.2d 463, 490 (N.J. App. 2002) (holding that the application of a minority share discount "to determine the non-owner spouse's fair share" of marital assets undermines "the purpose of equitable distribution" and is therefore inappropriate).

**¶17**        Instead, a trial court has discretion to consider whether a minority discount is appropriate, on a case-by-case basis, considering factors such as the minority shareholder's degree of control, lack of marketability, and the likelihood of a sale of the minority interest in the foreseeable future. *See Davies*, 880 P.2d at 1375 ("A discount for a minority

interest is appropriate when the minority shareholder has no ability to control salaries, dividends, profit distribution, and day-to-day corporate operations."); *In re Marriage of Johnston*, 726 P.2d 322, 325 (Mont. 1986) (explaining that application of a minority discount may be applied when it "accurately reflect[s]" a minority shareholder's lack of control); *In re Marriage of Branscomb*, 117 P.3d 1051, 1056 (Or. App. 2005) (noting the application of a minority share discount is a fact-specific inquiry that must be considered "on a case-by-case basis"); *In re Marriage of Tofte*, 895 P.2d 1387, 1391 (Or. App. 1995) (explaining a minority discount may be inappropriate when no sale of a minority share is imminent or planned). Because a minority share discount "is an attempt to take into account the difficulty of actually turning an asset into money[,]" its application may be inappropriate when underlying assumptions regarding lack of control and lack of marketability are not supported by the evidence. *See Tofte*, 895 P.2d at 1392.

¶18 Applying these principles to WME, the trial court's valuation is not supported by the evidence. Husband owns a 50% membership interest in WME, equal to that of the only other member of the limited liability company. The record reflects that Husband holds significant power regarding financial decisions, as evidenced by his decision to convert one-half of his salary to distributions as a tax-saving strategy. Although Husband testified he was unable to alter the terms of WME's rent, which were fixed by contract, the record does not otherwise reflect any substantial limitations on his joint control of WME as a 50% member. Further, Husband presented no evidence he has any plans to sell his interest in the business. Thus, for WME, the underlying assumptions justifying the application of a minority share discount are not supported by the record. *See Davies*, 880 P.2d at 1376 (concluding that application of a minority share discount was inappropriate when the record reflected the minority shareholder had "broad powers regarding financial decisions" and had "no intention of selling" his interest).

¶19 The trial court therefore abused its discretion by valuing WME at $602,000, substantially below not only Schwartley's valuation of $1,617,000, but also Koons' $830,000 fair value valuation (not applying a minority share discount), and even below Koons' $620,000 valuation that did apply the discount. Accordingly, we vacate the court's ruling as to WME and remand for a revaluation and equitable distribution of the community's interest in WME.

¶20 Turning to PSC, we conclude the evidence reasonably supports the application of a minority share discount. As with WME,

Husband did not testify regarding any intent to sell his interest in the business. Husband only owns a 20% share in PSC, however, and Wife has not cited, nor has our review of the record revealed, any basis for concluding that Husband's control over PSC is not substantially limited by the holder of the 80% interest. Therefore, because the trial court's application of a minority share discount and corresponding valuation of PSC at $536,000 is supported by the record, we discern no abuse of discretion.

### B.     Character of WME and PSC Distributions

**¶21**          Wife argues the trial court improperly classified the WME and PSC distributions made subsequent to the filing of the petition for dissolution as Husband's sole and separate property.

**¶22**          The characterization of property as separate or community is a question of law we review de novo. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4, 169 P.3d 111, 113 (App. 2007). "Property takes its character as separate or community at the time of acquisition and retains that character throughout the marriage." *Id.* at ¶ 5 (internal quotation omitted). As a corollary to this principle, the community is generally "entitled to the profits and gains attributable to community assets." *In re Marriage of Fong*, 121 Ariz. 298, 305, 589 P.2d 1330, 1337 (App. 1978). Although property acquired by either spouse after service of a petition for dissolution of marriage is the separate property of the acquiring spouse, the service of a petition for dissolution does not alter the status of preexisting community property. A.R.S. § 25-211(A), (B). Likewise, notwithstanding the filing of a petition for dissolution, when community property "is used to acquire new property," the new property is community property. A.R.S. § 25-211(B)(2). Because property acquired during marriage is presumed to be community property, the spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence. *Brebaugh v. Deane*, 211 Ariz. 95, 98, ¶ 6, 118 P.3d 43, 46 (App. 2005).

**¶23**          The parties do not dispute that WME and PSC were acquired during the marriage and constitute community property. It is also undisputed that the WME and PSC operating agreements provide for distributions to members in proportion to their percentage interests.

**¶24**          Pursuant to Husband's WME employment agreement, "[a]ll fees or other income of any kind attributable to [Husband's] medical services during the [term of employment] shall belong to [WME]." As

compensation for his services, the employment agreement provides that WME "shall pay [Husband] a base salary [during the term of employment]" of $250,000. The employment agreement further states that Husband's base salary "may be adjusted" upon mutual written agreement of Husband and WME. The record does not reflect any written amendment to the employment agreement.

¶25 The parties do not dispute that under his employment agreement Husband receives a "base salary" from WME in the amount of $250,000 and that amount, since the time Husband filed the petition for dissolution, is Husband's sole and separate property. Wife contends, however, that all WME and PSC post-petition distributions in excess of $250,000 constitute profits of the community's businesses and she is therefore entitled to one-half of the disbursements Husband received before the final decree was entered, when pursuant to court order the character of the businesses was transmuted from community property to Husband's separate property. Husband counters that all of the distributions were wholly earned income that he received for his toil and labor after his filing of the petition for dissolution and thus constitute his separate property. *Cf. Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 257, ¶ 31, 196 P.3d 852, 860 (App. 2008) ("Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself.") (quoting *Rundle v. Winters*, 38 Ariz. 239, 245, 298 P. 929, 931 (1931)).

¶26 At trial, Bull testified that notwithstanding the employment agreement, Husband received approximately $500,000 as his annual salary from WME until 2010, when Bull recommended that Husband instead receive $250,000 as salary and the remaining compensation for his labors, an additional $250,000, as distributions to avoid paying Medicare tax. When asked about Wife's argument that Husband's salary for his labor was limited to $250,000, Bull disputed her claim and stated that Husband was actually compensated $500,000 for his toil and labor. Bull further testified that, if Husband received all of his compensation for his labor as "salary," his profit distributions would have been "much less," in the nature of $50,000 per year.

¶27 As noted, the parties agree that Husband's stated WME salary of $250,000 constitutes his sole and separate property as of the filing of the petition for dissolution. *See Brebaugh*, 211 Ariz. at 98, ¶ 7, 118 P.3d at 46 (recognizing that "compensation for a spouse's post-dissolution efforts is

sole and separate property"). As to the rest of Husband's compensation, because it is derived from a community asset, Husband bears the burden of establishing the separate nature of all of the distributions he received. *See id.* at ¶ 6.

¶28 The operating agreements for WME and PSC provide that distributions of cash or other property shall be made to the members in proportion to their percentage interests. At trial, Bull testified that before 2010, Husband consistently earned an annual salary of approximately $500,000. In 2010, his compensation was restructured such that he received one-half of his compensation as salary and one-half as distributions. Although the record reflects this change was made as part of a tax-savings strategy and not in anticipation of the divorce, the restructuring is not dispositive as to whether all the distributions made by the two businesses became Husband's sole and separate property pending the final decree. *See Nelson v. Nelson*, 114 Ariz. 369, 371, 560 P.2d 1276, 1278 (App. 1977) ("[T]he treatment which income receives for tax purposes is not determinative of whether the property is community or separate."). Instead, determining the amount of Husband's compensation, for the purpose of deciding whether it is sole and separate property, must take into account that the source of the compensation is an asset owned by both spouses. Therefore, the amount must be reasonable given the totality of the circumstances.

¶29 As Bull acknowledged, Husband received a significant amount of money as profit distributions each year, but even if Husband did not work for the businesses, he nonetheless would have been entitled to claim whatever profits or losses were generated by WME and PSC. Although speaking in generalities, Bull testified that the profits disbursed to Husband, in excess of Husband's compensation for his labor, were approximately $50,000 per year, presumably as to WME. The parties have not identified, and our review of the record does not reveal, any evidence regarding the reasonable amount of compensation Husband received for his toil and labor at PSC. Thus, the trial court's finding that all monies paid to Husband by WME and PSC are Husband's sole and separate property is not supported by the record because it failed to adequately consider Wife's community interest in the two businesses. Nor does the record show that the trial court placed the burden on Husband of proving by clear and convincing evidence that the distributions he received from both businesses over the three-year period should be deemed his sole and separate property.

¶30 We therefore vacate the court's ruling regarding the character of the WME and PSC distributions and remand to determine the amount of

compensation Husband reasonably received from WME and PSC for his toil and labor. Any distributions Husband received in excess of that reasonable amount of compensation are attributable to the community as profits derived from existing community assets and subject to equitable division. *See* A.R.S. § 25-211(B)(2).

### C.    Attorneys' Fees

**¶31**    Both parties request an award of attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 25-324, which authorizes such an award after consideration of the financial resources of the parties and the reasonableness of their positions. In our discretion, we award Wife her costs and a portion of her reasonable attorneys' fees, in an amount to be determined upon her compliance with Arizona Rule of Civil Appellate Procedure 21(a).

### CONCLUSION

**¶32**    We affirm the trial court's valuation of PSC but vacate the court's valuation of WME, as well as its rulings on the WME and PCS interim disbursements, and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama