NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LIDIA TERESA STICKLER, *Petitioner/Appellee*,

*v.*

KURT ANDREW STICKLER, *Respondent/Appellant*.

No. 1 CA-CV 19-0115 FC
FILED 01-07-2020

Appeal from the Superior Court in Maricopa County
No. FN2016-003953
The Honorable Howard D. Sukenic, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Fromm Smith & Gadow, P.C., Phoenix
By Stephen R. Smith, Jennifer G. Gadow
*Counsel for Petitioner/Appellee*

Horne Slaton, PLLC, Scottsdale
By Thomas C. Horne, Matthew J. Monaco
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1   Kurt Andrew Stickler ("Husband") appeals several rulings in the decree dissolving his marriage to Lidia Teresa Stickler ("Wife"). We affirm the superior court's property allocation, but we reverse the denial of Husband's request for attorneys' fees and remand for reconsideration.

## FACTS AND PROCEDURAL HISTORY

¶2   The parties owned and operated an independent pharmacy, where Wife worked as a pharmacist and managed the pharmacy business. The parties also owned two commercial properties and one residential rental property, all of which Husband managed. The pharmacy was a tenant in the Wagon Wheel commercial property managed by Husband.

¶3   After Wife filed a petition for dissolution, the parties agreed to appoint a special master to manage the real property. Before trial, the special master sold the residential rental property to a third party; Wife purchased the Wagon Wheel property, and Husband purchased the other commercial property.

¶4   The superior court found that Husband was entitled to temporary spousal maintenance of $750 per month. The court allowed Husband to live in the marital residence and ordered Wife to pay the mortgage, utilities, and the premiums for Husband's car and health insurance. The court also awarded Husband $5,000 in attorneys' fees *pendente lite*.

¶5   The parties reached an agreement on several issues, as set forth in their pretrial statements. The parties agreed that each would receive specific items of personal property and "retain all other items in their possession." Both parties hired experts to value the pharmacy. Wife's expert, Laura Leopardi, calculated the value of the pharmacy to be $1,072,000. Husband's expert, Robert Farias, calculated the value to be $1,693,565.

**¶6**        The superior court adopted Leopardi's valuation and ordered Wife to pay Husband for his fifty-percent share of the pharmacy. The court denied Husband's claim that he was entitled to one-half of the distributions the pharmacy paid to Wife after she filed the petition for dissolution, finding the distributions represented additional salary paid to Wife so that she received fair compensation. The court also denied Husband's claim that he was entitled to compensation for a kiln that Wife sold after service of the petition and for her alleged misuse of community-owned fire brick. Finally, the court denied Husband's request for additional attorneys' fees.

**¶7**        Husband filed a timely notice of appeal from the final decree. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS

> *I.        The Evidence Supports the Superior Court's Valuation of the Pharmacy.*

**¶8**        Husband contends the superior court abused its discretion by accepting Leopardi's calculation of the value of the pharmacy and disregarding the amount set forth in a purchase proposal that Wife solicited from Walgreens. "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). We review the superior court's business valuation for an abuse of discretion. *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015). In considering Husband's argument that the record does not support the court's valuation, we view the evidence in the light most favorable to upholding the superior court's decision and will affirm if reasonable evidence supports it. *See In re Marriage of Molloy*, 181 Ariz. 146, 152 (App. 1994).

**¶9**        Wife received proposals from CVS and Walgreens after she asked how much they would pay to purchase the pharmacy. Wife did not, however, intend to sell the pharmacy. Walgreens provided Wife a term sheet specifically stating that its proposal was not a binding offer and that it was subject to due diligence and management approval. Husband contends that Wife is bound by the valuation in Walgreens' offer because Wife's pretrial statement admitted that the "value of the pharmacy is what a chain will pay to assume the clients and inventory."

**¶10**        Wife's expert, Leopardi, prepared a report in which she analyzed Walgreens' proposal. Although Leopardi included the Walgreens' proposal in her report, she clarified at trial that she did so only

as a "check" on the accuracy of her own valuation. Walgreens proposed purchasing only a portion of the pharmacy's assets, excluding the pharmacy's equipment and certain types of prescription inventory. Significantly, the proposal also did not account for any debts or liabilities. The community, therefore, would remain liable for the equipment leases, the building lease, and other liabilities. According to Leopardi, these debts totaled $450,000.

¶11 Despite the comment in Wife's pretrial statement, the superior court is authorized to consider the debts and obligations that are related to the pharmacy. *See* A.R.S. § 25-318(B). The record supports the court's conclusion that the Walgreens' proposal did not accurately reflect the value of the pharmacy for dissolution purposes. As such, the court did not abuse its discretion by not relying on the proposal.

¶12 Husband also contends that Leopardi erred in valuing the pharmacy's inventory.[1] In the pharmacy industry, the average wholesale price of inventory is an inflated number compared to the actual wholesale cost. The Walgreens' proposal included significant discounts to the inventory (88% for generic inventory and 25% for branded inventory). These discounts account for the inflated average wholesale price of the inventory. Husband asserts that Leopardi erred by substantially discounting the actual wholesale cost of the inventory in her valuation instead of discounting the inflated average wholesale price.

¶13 On cross-examination, Leopardi stated that she did not know that average wholesale price was an inflated number compared to actual wholesale cost, but when asked if she took discounts from the actual wholesale cost, Leopardi stated that she discounted the average wholesale price. Leopardi testified that the $480,000 inventory figure she used in her calculation came from the balance sheet and, according to the pharmacy's inventory reports, it was the average wholesale price. However, Leopardi also stated the converse: that $480,000 was the actual cost. She testified that she discounted the $480,000 figure, consistent with the Walgreens'

---

[1] Pursuant to Arizona Rule of Civil Appellate Procedure ("ARCAP") 13(a)(7), the "argument" section of Appellant's opening brief must contain "Appellant's contentions concerning each issue presented for review, with supporting reasons for each contention." Appellant properly addressed the pharmacy valuation issue in the "argument" section of his opening brief, but improperly discussed all other valuation issues in the "facts" section of his brief. However, in our discretion, we also address the valuation issues raised in the "facts" section. *See* ARCAP 25.

proposal. Leopardi agreed that without discounting the $480,000 inventory figure, the valuation of the pharmacy would increase by $322,000. She maintained, however, that the discount was appropriate and that the difference between average wholesale price and actual wholesale cost did not affect her analysis.

¶14  Wife confirmed that Walgreens offered to pay only a percentage of the average wholesale price. She did not agree, however, that the Walgreens' proposal would reimburse the pharmacy for the actual inventory costs of $480,000.

¶15  Leopardi's testimony regarding the value of inventory was conflicting. Moreover, it is unclear how the discounted inventory valuation factored into her own calculation of value for the pharmacy. Leopardi stated that she only used the Walgreens' proposal (with its corresponding inventory discount) as a check on her own valuation. Leopardi's income method valuation was based on the pharmacy as a going concern, whereas the Walgreens' proposal only offered to purchase certain assets.

¶16  Viewing this record in the light most favorable to affirming the decision below, *see Molloy*, 181 Ariz. at 152, we find no error in the court's determination that Leopardi accurately valued the inventory. To the extent there is conflicting evidence, the court below was in the best position to weigh that evidence and we will affirm the court's ruling if substantial evidence supports it. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009); *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶ 6 (App. 2009) (Substantial evidence is evidence upon which a reasonable person would reach the same conclusion.). The court gave several reasons for accepting Leopardi's valuation instead of that provided by Mr. Farias. These findings are also supported by substantial evidence.

¶17  Husband also argues that Leopardi improperly included a long-term debt of $137,000 for an equipment lease in her valuation. Husband claims the pharmacy could sell the equipment to reduce the debt by half. Although Leopardi agreed that selling the equipment would reduce the debt, Wife was unsure that any other pharmacy would pay for it and, if so, how much. Additionally, Walgreens did not actually offer to purchase the equipment. The record, therefore, supports including that debt in the business valuation.

¶18  Finally, Husband argues that Leopardi admitted to erroneously including a $118,450 asset as a liability. However, the record supports the superior court's conclusion that Leopardi adjusted her original

valuation to account for this error.  On this record, the court did not abuse its discretion by accepting Leopardi's valuation over the Walgreens' proposal.

> II.    *The Evidence Supports the Finding that the Distribution Was Reasonable Compensation to Wife.*

**¶19**        The pharmacy paid Wife a traditional salary of $90,000 annually.  Wife also received a $75,000 distribution from the pharmacy in 2016, after the dissolution petition was served.  According to Wife, she was paid the distribution as reasonable market-rate compensation.  Husband contends the distribution did not constitute separate property earnings but instead represented profits from the community business that he was entitled to share.

**¶20**        The separate or community character of property is a question of law reviewed *de novo*.  *Schickner*, 237 Ariz. at 199, ¶ 22.  Property acquired by either spouse after service of the petition for dissolution is separate property, but service of the petition does not alter the status of preexisting community property.  *Id.*  Thus, "the community is generally 'entitled to the profits and gains attributable to community assets[]'" even after service of the petition.  *Id.* (quoting *In re Marriage of Fong*, 121 Ariz. 298, 305 (App. 1978)).  Wife bore the burden of establishing by clear and convincing evidence that the distributions were not community property.  *Id.*

**¶21**        According to Wife and Leopardi, the industry standard for compensation of an owner-operator pharmacist ranges from $160,000 to $188,000 per year.  Leopardi's opinion was based on data from the Risk Management Association regarding similar pharmacies.  Although Husband questioned Leopardi's interpretation of this data, Leopardi explained how she arrived at the $188,000 reasonable compensation figure based on the data.

**¶22**        Both Wife and Leopardi testified that Wife took a lower salary as a tax-saving strategy, and, so that Wife's compensation was on par with industry standards, Wife took the post-petition distributions as salary.  There was no evidence that any distributions Wife received were in excess of reasonable compensation.  We do not reweigh the evidence on appeal.  *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).  As the trier of fact, the superior court determines the credibility of witnesses and weight to give their testimony.  *Id.*  The evidence supports the court's conclusion that the distributions did not constitute profits from the community pharmacy business.  *See Schickner*, 237 Ariz. at 201, ¶ 30.

### III. The Superior Court Did Not Abuse Its Discretion in Denying Husband's Request for Compensation for the Kiln and Fire Brick.

¶23 After the petition for dissolution was filed, Husband was gifted a kiln that he stored on the parties' Wagon Wheel commercial property next to his storage container. Wife disposed of the kiln without Husband's knowledge or approval. During the marriage, Husband also acquired a large amount of fire-resistant brick, which he stored at the Wagon Wheel property near his storage container. Husband claimed that Wife used the bricks as patio pavers even though she knew Husband was collecting them to build a wood-fired kiln. Wife took the position that these were items of personal property in her possession, which, according to the pretrial agreement, became her separate property.

¶24 Husband did not list either the kiln or the fire-resistant bricks as disputed property in his pretrial statement or otherwise request these items until the last day of trial. Nonetheless, the superior court allowed Husband to testify regarding this personal property, over Wife's objection. The court found Husband failed to establish that the kiln and fire-resistant bricks were his separate property and declined to order Wife to compensate him for these items.

¶25 Husband argues that the superior court's ruling deprived him of his separate property. However, according to Husband, he acquired the subject bricks during the marriage. Property acquired during the marriage is presumed to be community property. A.R.S. § 25-211(A); *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 12 (App. 2010). Thus, the bricks were presumptively community property.

¶26 Both parties' pretrial statements listed specific personal property stored at the Wagon Wheel property that the parties agreed was Husband's separate property. The kiln and fire-resistant bricks were not listed among those items, even though both were stored there *before* Husband filed his pretrial statement in February 2018. Thus, it was reasonable for the court to conclude that because the kiln and bricks were not specifically listed as Husband's property, they would be awarded to the party having possession, as set forth in the parties' agreement and pretrial statements.

¶27 Husband argues that he did not need to list the kiln in his pretrial statement because it was his separate property. However, the superior court found that Husband did not establish that the kiln was his separate property. Husband contends this finding was erroneous because

his testimony was uncontradicted. We do not agree. Although Husband's testimony was uncontradicted, it was not corroborated by any other evidence. Therefore, the court was not bound to accept it, and we find no abuse of discretion. *Compare Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) (Courts are "not bound to accept as true the uncontradicted testimony of an interested party."), *with Fort Mohave Farms, Inc. v. Dunlap*, 96 Ariz. 193, 198 (1964) ("[W]here testimony of an interested witness is corroborated by a disinterested witness, rejection of that evidence amounts to arbitrary action.").

**¶28** If Husband wanted to assert a claim of destruction of community property under A.R.S. § 25-318(C), he was obligated to raise the issue in his pretrial statement or amend the pretrial statement once he learned Wife disposed of the items. Husband learned that the items were gone by the summer of 2018. Although this was after he filed his pretrial statement, it was still several months before the last day of trial. Even if the kiln and the bricks were Husband's separate property and not subject to the property disposition listed in the pretrial statements, we cannot say the court abused its discretion in failing to order compensation to Husband for these items because he failed to raise the issue before the last day of trial. *See Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶ 28 (App. 2017) (holding the pretrial statement controls the course of the litigation and is "intended to avoid unfair surprise at trial"). We affirm the property allocation.

    *IV. The Evidence Does Not Support the Finding that There Was No Financial Disparity.*

**¶29** The superior court denied both parties' requests for attorneys' fees under A.R.S. § 25-324, finding there was not a substantial disparity in financial resources and that neither party was more unreasonable than the other. We review the court's ruling on a request for attorneys' fees for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014). Husband challenges only the court's finding that there was not a financial disparity.

**¶30** Although the parties divided all retirement and liquid accounts equally, Wife's income was substantially higher than Husband's. According to Husband's August 2017 financial affidavit and testimony, he earned about $1,025 per month. In comparison, Wife's November 2017 financial affidavit indicates she earned $13,971 per month. Wife did not

dispute these income figures.[2] This income disparity is further supported by the temporary orders, which required Wife to pay Husband's living expenses for a time during the litigation. Although both parties received an equal amount of assets in the divorce, there remains a significant disparity in their earnings.

¶31         Financial disparity alone does not mandate an award of fees. *Id.* at ¶ 9. However, the superior court did not consider how this financial disparity impacted Husband's request for fees because it found no financial disparity. This finding was contrary to the evidence. We reverse the portion of the decree denying Husband's request for attorneys' fees and remand for reconsideration of the financial disparity between the parties. *See Magee v. Magee*, 206 Ariz. 589, 592-93, ¶ 17 (App. 2004) (In considering the parties' financial resources, the court is obligated to consider other factors "such as the degree of the resource disparity between the parties, the ratio of the fees owed to the assets and/or income of each party, and other similar matters" in addition to ability to pay.).[3]

## ATTORNEYS' FEES ON APPEAL

¶32         Both parties request an award of attorneys' fees on appeal, citing A.R.S. § 25-324. We do not have current financial affidavits from either party; therefore, we cannot determine if there continues to be any financial disparity. Additionally, neither party took an unreasonable position on appeal. On that basis, we defer any award of attorneys' fees incurred on appeal to the superior court's determination as to financial disparity. In the event the court finds financial disparity such that an award of fees under § 25-324 is appropriate, that court may also consider

---

[2]         Wife argues that Husband did not submit his financial affidavit as a trial exhibit. He did, however, file it with the court before trial. He did not update it thereafter but testified that he earned $10,000 to $12,000 in 2017.

[3]         Wife also argues that Husband failed to comply with the court's order that the parties address any dispute regarding attorneys' fees in the pretrial statements and include a fee affidavit as required by Arizona Rule of Family Law Procedure ("Rule") 78(D) (2018). Wife did not make this objection at trial. Arguments not presented to the superior court cannot be raised for the first time on appeal. *Kinnear v. Finegan*, 138 Ariz. 34, 36 (App. 1983). Furthermore, Wife also asked for attorneys' fees and similarly failed to comply with this order and Rule 78(D).

Husband's appeal fee request. In our discretion, we decline to award either party their costs on appeal.

## CONCLUSION

**¶33**         We affirm the property allocation in the decree of dissolution. We reverse the denial of Husband's request for attorneys' fees and remand for reconsideration. Each party shall bear his or her own costs on appeal.

