NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

BRENT JACOB GARDNER, *Petitioner/Appellee/Cross-Appellant*,

v.

CYNTHIA KATHLEEN GARDNER, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 21-0135 FC
FILED 4-26-2022

Appeal from the Superior Court in Navajo County
No. S0900DO201900110
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Davis Miles McGuire & Gardner, Tempe
By Douglas C. Gardner, Michael D. Girgenti
*Counsel for Petitioner/Appellee/Cross-Appellant*

Riggs Ellsworth & Porter PLC, Show Low
By Michael R. Ellsworth
*Counsel for Respondent/Appellant/Cross-Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

_____

**S W A N N,** Judge:

**¶1** Cynthia Kathleen Gardner ("Wife") appeals from the decree dissolving her marriage to Brent Jacob Gardner ("Husband"), who cross-appeals. The disputes on appeal are limited to the valuation and division of the parties' dental practice and related accounts. We conclude that the superior court considered adequate evidence to support its division of property, and that its decisions fell well within the bounds of its discretion. We therefore affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2** The parties married on August 17, 2007. In September 2016, the parties purchased Winslow Dental for $870,000. They took out a million-dollar loan to purchase the practice and the associated building.

**¶3** Before purchasing the practice, Husband sometimes worked for Winslow Dental as an associate dentist. The previous owner of the practice made approximately one million dollars per year in revenue. While working at the practice as an associate, Husband observed that many patients had dental needs that were not being addressed in-house. The previous owner often referred patients to Flagstaff or simply did not inform them that they needed more complex dental procedures. Husband believed he could increase revenue by conducting these procedures in-house.

**¶4** In 2017—the first full year the parties owned Winslow Dental—the practice's revenue increased by $447,000 to $1,504,832. Since then, Winslow Dental's total income has consistently remained around $1.5 million per year. By April 2019, the parties owed approximately $120,000 on their loan.

**¶5** Husband filed for dissolution in April 2019. On November 10, 2020, the superior court held a hearing to discuss the division of community property and debts. Both parties hired experts to conduct valuations of the practice. Husband's expert, Mathew Porter, used a combination of the Prior Transaction Method, the Direct Market Data

Method, and the Capitalization of Earnings Method to reach a valuation of $725,000. Wife's expert, Derrick Doba, used the Discounted Cash Flow Method to reach a valuation of $1,604,000.

¶6 After consideration of the experts' reports and testimonies, the court ultimately rejected both their opinions and valued the practice at $741,000. The court then awarded Husband the practice and Wife $370,500 as her community interest. The court also awarded Wife $33,296.10 as her interest in the business's bank account. Wife appeals, and Husband cross-appeals.

**DISCUSSION**

I.    THE SUPERIOR COURT DID NOT IMPROPERLY VALUE WINSLOW DENTAL USING THE 2016 PURCHASE PRICE.

¶7 Wife contends that the superior court erred by valuing the practice as of the date of purchase rather than "valuing the business at its present value, time of filing petition or time of dissolution of marriage." It is well settled that "the selection of a valuation date rests within the wide discretion of the superior court and will be tested on review by the fairness of the result." *Sample v. Sample*, 152 Ariz. 239, 242–43 (App. 1996).

¶8 Here, the superior court did not specify a valuation date. Neither party requested the court make findings of fact or conclusions of law. When neither party requests findings of fact and the superior court does not make specific findings of fact, "we must assume that the superior court found every fact necessary to support its [ruling] and must affirm if any reasonable construction of the evidence justifies the decision." *Horton v. Mitchell*, 200 Ariz. 523, 526, ¶ 13 (App. 2001) (citation and internal quotation marks omitted).

¶9 There is evidence in the record that the court valued the practice as of 2019. In the dissolution decree, the court found "[a]fter considering all these factors and determining that the overall income of the practice did not change significantly from 2017 to 2019, the court determines that the appropriate value to put on the practice remains $870,000." The court used the 2016 purchase as a starting point for its valuation, subtracted current debt, weighed market factors, and considered whether the overall income of the practice had changed significantly from 2017 to 2019. Though the court did not state a specific valuation date, its consideration of the practice's income over a three-year period demonstrates that the court did not simply accept the 2016 purchase price as the business's valuation for purposes of the dissolution case.

II. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION IN VALUING WINSLOW DENTAL AT $741,000.

¶10        "We review the superior court's valuation of a business in a divorce proceeding for an abuse of discretion," *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015), and consider the evidence in the light most favorable to upholding the superior court's ruling, *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). "A trial court abuses its discretion when it commits an error of law or reaches a conclusion without considering the evidence . . . or the record fails to provide substantial evidence to support the trial court's finding." *Schickner*, 237 Ariz. at 197, ¶ 13 (citation and internal quotation marks omitted). We will not disturb the superior court's factual determinations "unless clearly erroneous." *Id.* We defer to the weight the superior court gives to conflicting evidence and witness credibility. *Gutierrez*, 198 Ariz. at 347, ¶ 13.

A. The Superior Court Did Not Err in Determining the Overall Income of The Practice Did Not Significantly Increase Between 2017 and 2019.

¶11        In the dissolution decree, the superior court stated that "[a]fter considering all these factors and determining that the overall income of the practice did not change significantly from 2017 to 2019, the court determines that the appropriate value to put on the practice remains $870,000."

¶12        Wife argues the court's finding was not supported by the evidence. She claims Husband's $240,000 salary, Porter's testimony that "the business had increased yearly revenue by approximately $500,000 annually," Husband's reinvestment in equipment, and the fact that in four years, the parties paid off $850,000 of their nearly million-dollar business loan is evidence that the overall income of the practice increased between 2017 and 2019. But Wife's expert found the practice's total revenues between 2017 and 2019 to be as follows: $1,504,832 in 2017; $1,535,450 in 2018; and $1,419,277 in 2019. These figures do not demonstrate a significant increase. Husband's expert also determined the practice's revenue from 2017 to 2019 remained around $1.5 million. Wife does not contest these figures. We find both experts' uncontested income figures sufficient evidence to support the superior court's finding.

       B.       There Is Sufficient Evidence in The Record to Support the Court's Valuation of Winslow Dental.

¶13         The valuation of the practice is a factual determination. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). Neither party requested findings of fact, and we must therefore assume the superior court found every fact necessary to support the decree "if any reasonable construction of the evidence justifies the decision." *Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982). Wife argues that the record does not support the superior court's valuation of Winslow Dental. We disagree.

       1.       Expert Valuations.

¶14         Both parties hired experts to conduct valuations of the practice. Husband's expert, Mathew Porter, testified that he used both the income approach and the market approach to calculate the value of the dental practice. The income approach focuses on historical financial data to estimate future income of the practice without regard for qualitative factors such as location, patient base, technology, photos of the practice, and competitive market analysis. The Capitalization of Earnings Method ("CEM") is a method within the income approach that divides a business's projected cash flow for one year by a capitalization rate. Using the CEM with a 32.80% capitalization rate and a 40% marketability discount, Porter determined the value of the practice to be $750,000.

¶15         The market approach considers market comparable sales generated from recently completed transactions. Porter valued Winslow Dental using two methods under this approach. First, Porter used the Direct Market Data Method. This method values the business using "benchmarks and multiples of recently completed transactions," for businesses of a similar type and size. In his report, Porter analyzed the sales of eight Arizona dental practices with similar characteristics to Winslow Dental. Porter then applied a marketability discount of 40% and came to a value of $822,000.

¶16         The Prior Transaction Method uses previous transactions of the subject company as an indicator of current value. Porter used the 2016 sale of Winslow Dental for $870,000 as a starting point. He applied a price revenue factor of 87.6% to the trailing 12-month revenue prior to April 2, 2019, to reach a value of $1,249,230. Porter then added a marketability discount of 45%. In deciding on a discount rate, he considered that two of the largest employers in Winslow were either closing or reducing operations, that the practice is only credentialed in-network with one

insurance plan, that the practice is set up for a left-handed dentist, that competition has significantly increased since 2016, and that the 2016 sale of the practice was not an arms-length transaction. Using this method, Porter came to an initial valuation of $602,000. After weighing the figures from these methods, Porter came to a final valuation of $725,000.

¶17 Derrick Doba conducted a valuation of Winslow Dental at Wife's request. He used the Discounted Cash Flow Method, which falls under the income approach. This method uses a discount rate to calculate the present value of future expected net cash flows. As the parties had no plans to sell the practice, Doba focused on the value of the practice to a potential investor rather than the fair market value in an immediate sale. Using this approach, Doba gathered the value of the practice's assets adjusted for market value, and subtracted what was owed to creditors to estimate the practice's total invested capital. He placed the value at $1.6 million.

¶18 The main difference between Porter's and Doba's approaches is that Doba did not include any discount for a lack of marketability. A marketability discount is a discount required to turn an illiquid asset, such as Winslow Dental, into cash. Porter opined that the illiquidity of the dental practice justified a marketability discount, because "if you need an illiquid asset turned into cash quickly, it requires a discount to meet the price of the market, supply and demand." Porter used these figures because he believed that as the practice is in Winslow, it would take 12 to 24 months to sell. It took the previous owner 5 years to sell the practice.

2. The Court's Valuation.

¶19 The court valued Winslow Dental at $741,000. Though the court ultimately rejected both expert opinions in part, it found the market approach to be a more equitable method of valuing the practice. There was also evidence in the record that would have allowed the court to apply its own discount. Porter testified that the industry standard discount for lack of marketability is 25% to 40%, though the National Association of Certified Valuators and Analysts handbook contains studies supporting up to a 45% discount. Doba testified that Porter's deductions were excessively high, and that average deductions ranged from 20% to 30%.

¶20 There is evidence in the record to support the court's conclusion that Winslow Dental has decreased in value since 2016. Husband testified that after purchasing the practice, he increased revenues by tapping into a backlog of untreated dentistry among the practice's

existing clients. These services, once completed, cease to be significant sources of revenue because he cannot "keep on putting braces on the same patients over and over." In order to maintain revenue levels, Winslow Dental would need a continuous stream of new patients.

**¶21** Husband testified that increased competition contributed to the practice's decreased value. Since 2016, an area dentist who previously worked two days per week is now operating 90% of the time, and the Indian Health Service Clinic expanded from a trailer to a $2-million-dollar state-of-the-art facility supporting eight dentists. Additionally, a new competitor opened shop in January 2019. Husband opines that the value of the practice has decreased in the face of these changing market factors. Porter and Kyle Spencer—a business consultant who brokered the sale of Winslow Dental to the parties in 2016—agreed that the practice was worth $150,000 less than the purchase price despite the increase in revenue due to market factors and the nature of the original transaction.

**¶22** Finally, the court may have based its valuation on the Industry Formula Method. Porter and Doba agreed that an industry rule of thumb for valuations, often referred to as a sanity check, is based on 65% of the last 12 months' revenue. Using Doba's figures, 65% of Winslow Dental's 2019 revenue, less liabilities, is approximately $800,000.

**¶23** We do not know which method the superior court used, because neither party requested findings of fact or conclusions of law. However, as the court's final valuation lay between both expert opinions and was supported by evidence in the record, we hold that the court did not abuse its discretion in its valuation of Winslow Dental.

III. THE DIVISION OF THE WINSLOW DENTAL BANK ACCOUNT WAS PROPERLY BEFORE THE SUPERIOR COURT.

**¶24** As of April 1, 2019, the business account held $66,592.19. By the date of the trial, however, those funds increased to $600,000. The superior court found that the funds in the account as of April 1, 2019, were community assets and awarded Wife $33,296.10 as her one-half interest. Wife argues that the court erred in refusing to consider the increase in its division of community assets. We disagree. Under A.R.S. § 25-211(A)(2), funds Husband acquired after service of the dissolution petition are his sole and separate property.

**¶25** On cross-appeal, Husband asserts that the superior court erred in awarding Wife one-half of the business bank account because Wife failed to raise the issue in her pretrial statement and her inventory of

properties and debts. The purpose of a pretrial statement is "to avoid unfair surprise at trial." *Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶ 28 (App. 2017). Wife contends that Husband was on notice of the need to divide the business bank account. In her pretrial statement, Wife requested that the court "award the parties an equitable division of any and all community property, to include, but not limited to, the business interest in Winslow Dental." Husband claims he was ambushed at trial because he did not have an opportunity to adequately prepare for questioning regarding the bank account. We disagree.

**¶26** In *Leathers*, we determined that the issue of the husband's life insurance was not properly before the superior court because it was not listed as a contested issue in the parties' pretrial statement nor their closing arguments. *Leathers v. Leathers*, 216 Ariz. 374, 378, ¶¶ 18–19 (App. 2007). The wife only raised the issue in her post-trial proposed decree, but argued that the husband was on notice of her position because the issue had been raised in her temporary order papers and her settlement conference memorandum. *Id.* We found those pretrial mentions insufficient to meet the wife's procedural duties. *Id.* at ¶ 19.

**¶27** Here, Husband agreed that the bank account was an asset of the business. Husband's expert included the business account in his valuation of the business. Husband receives his salary in the form of draws from the account. The parties conducted extensive discovery concerning both their and the practice's finances. The record contains sufficient evidence that Husband was on notice of Wife's position regarding the business bank account.

**¶28** Husband argues that because the bank account is an asset of the dental practice that contributes to its value, dividing the account resulted in a windfall to Wife. We disagree. There is no evidence in the record that the superior court included the bank account funds in its valuation of the practice. The fact that the superior court awarded Wife half of the bank account after concluding its valuation itself weighs against Husband's contention.

**¶29** The superior court carefully considered factors concerning the valuation of the business. We cannot say on this record that its treatment of the business and the bank account did not represent a cogent approach to its overall responsibility to divide the assets equitably. We therefore affirm.

¶30     Husband has requested attorney's fees pursuant A.R.S. § 25-324 and ARCAP 21.  After consideration of the parties' respective financial resources and the reasonableness of their positions, we decline his request in the exercise of our discretion.

## CONCLUSION

¶31     For the foregoing reasons, the decree is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA